MEMORANDUM OPINION AND ORDER

MacKENZIE, District Judge.
This matter is before the Court on objections to the United States Magistrate Judge’s Report and Recommendation entered on November 19, 1993.
I. FACTS AND PROCEDURAL HISTORY
The four plaintiffs are purchasers of used cars, who also seek class certification for several thousand used car buyers, who here bring suit against Charlie Falk Auto Wholesalers, Inc. (“Falk”), TranSouth Financial Corporation (“TranSouth”), and JB Collection Corporation (“JB”), alleging violations of the Racketeer Influenced and Corrupt Organizations Act (“RICO”), the Fair Debt Collection Practices Act, the Virginia Uniform Commercial Code, the Virginia Consumer Protection Act, common law fraud and conspiracy.
The Complaint alleges that the defendants engaged in a scheme, whereby Falk sold used cars to high-risk customers at exorbitant interest rates. These purchases were financed, with security agreements, by Tran-South. When a purchaser defaulted on his loan, TranSouth repossessed the car and sent notice of default to the customer. This notice informed the owner that he could redeem his ear upon payment of the deficiency, but if this deficiency was not paid the ear would be sold at a private sale. The Complaint further alleges that no private sale actually occurred. Instead, pursuant to a written contract between Falk and Tran-South, the cars were transferred, or repurchased, by Falk at deflated prices. Falk then assigned the reacquired loans to JB, its wholly-owned subsidiary, for collection. JB would write a demand letter to the customers for the deficiency, which was based on the TranSouth-Falk repurchase price and the outstanding balance of the loan. If the customer did not pay this amount, JB would file a collection action. Falk would resell the repossessed vehicles.
On July 20, 1993, TranSouth moved to dismiss Counts I-IV, the federal RICO claims, for failure to state a claim upon which relief could be granted, and to dismiss Counts VI-VIII, the pendent state claims, for lack of subject-matter jurisdiction. On August 3,1993, Falk and JB, likewise, moved for partial judgment on the pleadings as to Counts I-IV with respect to all plaintiffs, and Count V as to plaintiff Seamster. The matter was designated to a United States Magistrate Judge for the submission of a Report and Recommendation (Report). Following a hearing, the Magistrate Judge granted the motions. The parties then filed objections to various portions of the Report. Oral argument before the district court was had. The Court, having examined the objections filed by both the plaintiffs and defendants and having made de novo findings with respect to the portions objected to, adopts the findings and recommendations set forth in the Report *745 of United States Magistrate Judge Prince which is a monument of clarity.[1]
II. DISCUSSION OF AUTHORITY
RICO, codified at 18 U.S.C. §§ 1961 to 1968, is unique in that it creates a civil action in favor of an individual who has been injured by a violation of the act. Specifically, the civil section of RICO provides that:
Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue ... and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney’s fee.
18 U.S.C. § 1964(c) (1988) (emphasis added). The civil RICO claims involved in this lawsuit are based on alleged violations by the defendants of 18 U.S.C. § 1962(a), (c), and (d), which require the plaintiff to prove that the defendants engaged in a “pattern of racketeering activity”. This pattern is defined as two distinct but related acts within a ten year period that are indictable under certain provisions of the federal criminal code. 18 U.S.C. § 1961(5) (1988).
The plaintiffs allege that mail fraud forms the predicate acts of this RICO claim.[2] The elements of criminal mail fraud are (1) a scheme to defraud and (2) the mailing of a letter for the purpose of executing the scheme. See Pereira v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 362-63, 98 L.Ed. 435 (1954).
A. Reliance Requirement Under Civil RICO
The Magistrate Judge, however, dismissed Counts I-IV of the Complaint, the federal RICO claims, because the plaintiffs failed to allege that they detrimentally relied on the mailings sent to them by JB and TranSouth. • This Court agrees.
To make out a civil action for damages under § 1964(c) of the RICO statute, the plaintiffs must make two showings: (1) that they have suffered injury to their business or property; and (2) that this injury was caused by the predicate' acts that make up the § 1962 violation—in this case, mail fraud. See Brandenburg v. Seidel, 859 F.2d 1179, 1187 (4th Cir.1988).
Specifically, the- plaintiffs allege in their Complaint and briefs that (1) the defendants’ car “churning” scheme amounted to federal mail fraud[3]; (2) the defendants engaged in a pattern of this activity; and (3) this scheme injured the plaintiffs in that they lost thousands of dollars, equity in their cars, and any value in the cars over and. above what was owed on the loans. However, unlike most mail fraud cases that deal with “fraud by deception” and, by their very nature, require an element of reliance on deceptive mailings, the plaintiffs argue that the scheme involved here is one of “fraud by cheating” and that reliance on the mailings is irrelevant and unnecessary.[4] In short, the plaintiffs reason that they were injured by the mail fraud scheme of the defendants and, consequently, they were injured “by reason of a violation of section 1962.” See 18 U.S.C. § 1964(c).
Plaintiffs’ argument, however, is directly contradicted by prior opinions of the Fourth Circuit and, to the Court’s knowledge, has not been adopted by any other circuit.[5] In *746 Brandenburg, the Fourth Circuit noted that while it was not necessary to establish detrimental reliance by the victim to make out a criminal violation of the federal mail fraud statute, reliance was “necessary to establish injury to business or property ‘by reason of a predicate act of mail fraud within the meaning of § 1964(c) [civil RICO].” 859 F.2d at 1188 n. 10. This requirement of detrimental reliance was reiterated by the court several years later. See Caviness v. Derand Resources Corp., 983 F.2d 1295, 1305 (4th Cir.1993) (“[A] claim under RICO requires both reliance and damage proximately caused by the violation”). Recently, the Fourth Circuit had an opportunity to address this precise reliance issue in a “fraud by cheating” context but declined. See Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc., 18 F.3d 260, 264 (4th Cir.1994). This Court is in accord with and is bound by the precedent established by this circuit. Because the plaintiffs failed to allege detrimental reliance on the mailings of TranSouth, Falk or JB, the civil RICO claims against these defendants must be DISMISSED.[6]
B. Proximate Cause
Based on the failure of the plaintiffs to allege detrimental reliance, the Magistrate Judge further found that the Complaint failed to adequately plead that the defendants were the proximate cause of the plaintiffs’ injuries. See Holmes v. Securities Investor Protection Corp., — U.S. -, 112 5.Ct. 1311, 117 L.Ed.2d 532 (1992) (under § 1964(c), RICO plaintiff must allege and prove that his injury was proximately caused by defendants’ unlawful conduct); Brandenburg, 859 F.2d at 1187 (“[A] civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege ... an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged”). This Court agrees.
At its heart, civil RICO is merely a statutory tort remedy, requiring both a eause-in-faet relationship as well as “legal” or “proximate” cause between the defendant’s action and the injury. Brandenburg, 859 F.2d at 1189. The latter doctrine involves a policy determination made by the courts, “taking into consideration such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection.” Id.
While the Court concedes that plaintiffs have pled a cause-in-fact, or “but for”, relationship in this case, “such a cause-in-fact connection, standing alone, does not suffice to establish liability.” Id. The Fourth Circuit has adopted a policy that in civil cases where mail fraud forms the predicate acts, detrimental reliance on the mailings by the victims is required to satisfy the causal connection requirement of § 1964(c). See id., at 1188 n. 10. Thus, the RICO claims against the defendants are DISMISSED for failure to allege an adequate causal connection between the plaintiffs’ injuries and the defendants’ conduct.[7]
C. Association-in-fact of Corporations as a RICO “Enterprise”.
As a preliminary matter, several counts of the Complaint allege an association-in-fact enterprise consisting of TranSouth, Falk and JB. Defendants Falk and JB argue that an association of corporate entities cannot be an “enterprise” for RICO purposes. This Court disagrees.
*747 A RICO “ ‘enterprise’ includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.” 18 U.S.C. § 1⅜61(4) (1988). While the Fourth Circuit has not ruled on this issue specifically, see Entre Computer Centers, Inc. v. FMG of Kansas City, Inc., 819 F.2d 1279, 1287 (4th Cir.1987), it has upheld a RICO conviction where the enterprise consisted of an association-in-fact of corporations. See United States v. Vogt, 910 F.2d 1184, 1193-94 (4th Cir.1990), cert. denied, 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991).
The Second Circuit, however, has specifically held that an association-in-fact of corporations can form a RICO enterprise. United States v. Huber, 603 F.2d 387, 393-94 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). The court in Huber found the list of enterprises in § 1961(4) to be merely illustrative:
Congress was concerned about the impact on the American economy of the infiltration of organized crime into interstate commerce. There is no reason to believe that Congress cared what form such infiltration took, except to indicate ... that all such harmful infiltration, regardless of form, should be eradicated.... We agree with the government that [holding that an association of corporations cannot form a RICO enterprise] would perversely insulate the most sophisticated racketeering combinations from RICO’s sanctions, the precise opposite of Congress’ intentions.
Id. at 394.
In support of their argument, the defendants cite a Maryland district court opinion stating that “[corporations cannot under RICO associate in fact to constitute an enterprise.” Benard v. Hoff, 727 F.Supp. 211, 215 (D.Md.1989). The Benard court, however, cited no authority for this conclusion, and we are not bound by its decision.
Instead, the Court agrees with the rationale of the Second Circuit in Huber. In enacting RICO, Congress recognized that organized crime in the United States had become a highly sophisticated, organized and widespread business. See United States v. Turkette, 452 U.S. 576, 588, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981). Eliminating associations-in-fact of corporations from the reach of RICO would thus allow the most powerful, sophisticated and potentially dangerous criminals to escape punishment. This was certainly not the intent of Congress. Thus, the Court finds that an association-in-fact of corporations can be an enterprise for purposes of RICO.
D. Distinguishing Between the “Pattern” and the “Enterprise”
Count I of the Complaint alleges that the defendants violated 18 U.S.C. § 1962(a) by engaging in a pattern of racketeering activity and investing income from that activity in an enterprise.[8] Count III alleges a violation of 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate § 1962(a).
Both the “enterprise” and the “pattern” are distinct and separate prerequisites of this RICO claim:
The enterprise is an entity ... The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute ... The “enterprise” is not the “pattern of racketeering activity”; it is an entity separate and apart from the pattern of activity in which it engages.
Turkette, 452 U.S. at 583, 101 S.Ct. at 2528-29. The Magistrate Judge found that the Complaint adequately alleged both a “pattern” and an “enterprise” for RICO purposes. This Court agrees.
Proving the existence of an enterprise requires evidence of an “ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. Id. On the other hand, the pattern is “proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.” *748 Id.; see also United States v. Tillett, 763 F.2d 628, 632 (4th Cir.1985) (association-in-fact must be continuous in nature, have a common purpose and have a structure and existence “beyond that which [is] necessary to commit the predicate [acts of racketeering]”).
The enterprise alleged in Counts I and III consists of an association-in-fact of Falk, TranSouth and JB. The Complaint alleges the existence of an ongoing and longstanding organization between the three defendants, with each playing different roles: Falk, as a car seller; TranSouth, as a financier; and JB, as a collection agent. Further, the Complaint alleges that these defendants committed the requisite number of predicate acts of mail fraud to constitute a “pattern of racketeering activity.” This is all the statute requires.
Defendant Falk contends that the Complaint is deficient because it only alleges that the defendants associated together during the “churning” schemes, i.e. while committing the alleged predicate acts of mail fraud. See Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808, 816 (8th Cir.1992) (acts of the enterprise are only those with which all members are associated and which give effect to the purpose of the enterprise). However, the Supreme Court has held that a wholly illegitimate and illegal association can be the “enterprise” for RICO purposes. Turkette, 452 U.S. at 580, 101 S.Ct. at 2527. Thus, the argument that if the defendants only associated together while committing mail fraud then they cannot be a distinct RICO enterprise, is unpersuasive. Even if they were a completely illegitimate association, the Supreme Court has held that such an organization can be an “enterprise” under RICO.
In this case, however, the Complaint does allege that the organization existed in the intervals between the mail fraud violations. See Tillett, 763 F.2d at 632. In Tillett, the defendants established a restaurant and formed a corporation to aid in their illegal activities. Id. Here, Falk sold cars and assigned most of the car loans and security agreements to TranSouth. JB, Falk’s wholly-owned subsidiary, handled Falk’s collection work. Only when a buyer defaulted on his car loan is the mail fraud scheme alleged to have occurred.
The Court thus finds that the Complaint clearly alleges an association-in-fact of the defendants that existed “separate and apart from the pattern of racketeering activity in which it engage[d].” Id. at 631. Therefore, the plaintiffs have adequately alleged a distinct “enterprise” and “pattern of racketeering activity.”
E. Participating in the Conduct of the Enterprise
Counts II and IV of the Complaint allege that TranSouth and JB violated 18 U.S.C. § 1962(c).[9] Section 1962(c) provides that:
It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c) (1988). Strangely, in these counts, the Complaint alleges that Falk was the “enterprise”, while TranSouth and JB were the “persons” associated with and employed by the enterprise. The Magistrate Judge dismissed these counts because he concluded that the Complaint failed to allege that TranSouth participated in the conduct of the affairs of Falk, and JB, as a wholly-owned subsidiary of Falk, could not be the “person” under § 1962(c) where Falk is the “enterprise.” This Court agrees.[10]
The Supreme Court has recently addressed this statute in great detail. See Reves v. Ernst & Young, — U.S.-, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). In Reves, the Court considered the question of the meaning of the phrase “to conduct or participate, directly or indirectly, in the con *749 duct of such enterprise’s affairs.” Id. at -, 113 S.Ct. at 1166. The Court held that to be liable under § 1962(e), one must “participate in the operation or management of the enterprise itself.” Id. at-, 113 S.Ct. at 1173. While subsections (a) and (b) of § 1962 apply to the infiltration of legitimate organizations by “outsiders”, subsection (c) has a more limited reach—“liability depends on showing that the defendant conducted or participated in the conduct of the ‘enterprise’s’ affairs, not just their own affairs.” Id. In this case, TranSouth is only alleged to have associated with Falk in this scheme— the Magistrate Judge described their relationship as akin to a partnership. Such “outsiders” can only operate or manage an enterprise by exerting “control over it as, for example, by bribery.” Id.
While TranSouth arguably participated in the affairs of the association-in-faet of Falk, TranSouth and JB, the “enterprise” in Counts II and IV is alleged to be merely Falk. TranSouth, however, is not alleged to have operated or managed Falk. Nowhere in the Complaint is TranSouth alleged to have exerted outside control over Falk through bribery or any other form. Thus, the Complaint fails to state a violation of § 1962(c) and is DISMISSED.
F. The Fair Debt Collection Practices Act Claim
Count V of the Complaint alleges that JB violated 15 U.S.C. § 1692c, the Fair Debt Collection Practices Act (“FDCPA”), in collecting the debts owed by the plaintiffs. JB moved for partial summary judgment on this claim against plaintiff Seamster only, arguing that the claim had been filed beyond the statute’s one-year limitations period. The Magistrate Judge agreed, holding that the one-year limitations period in § 1692k(d) is a jurisdictional prerequisite to filing suit and cannot be equitably tolled. This Court agrees.
Section 1692k(d), entitled “Jurisdiction,” states in pertinent part: “An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court ... within one year from the date on which the violation occurs.” 15 U.S.C. § 1692k(d) (1988). As to the time period involved, there is no dispute.- The events constituting the alleged violations of the FDCPA took place on December 27,1988 and March 26, 1989. The Complaint was filed on June 17, 1993. Thus, the only issue is whether'§ 1692k(d) is a statute of limitations or a jurisdictional prerequisite.
Jurisdictional limitation periods, unlike statutes of limitations, cannot be tolled by fraudulent concealment. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 397, 102 S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982) (stating that consideration of an equitable tolling argument would be “gratuitous” if a time limitation were jurisdictional); Hunt v. Schweiker, 685 F.2d 121, 123 (4th Cir.1982) (whether time limitation is subject to equitable tolling depends on whether it is jurisdictional or a statute of limitations); Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1040-41 (D.C.Cir.1986) (where a time limitation is jurisdictional, it ... will not be tolled or extended on account of fraud). Thus, the characterization of the limitation period is dispositive.
Plaintiff notes that the United States Supreme Court has stated that the doctrine of fraudulent concealment is “... read into every federal statute of limitation.” Holmberg v. Armbrecht, 327 U.S. 392, 396-97, 66 S.Ct. 582, 584-85, 90 L.Ed. 743 (1946). While this statement is accurate, it begs the question of whether, in fact, § 1962k(d) is a limitations period or a jurisdictional statute. Plaintiff further relies on the similar limitations period found in the Truth in Lending Act. (TILA) for support. That statute, like § 1692k(d), provides for a limitation period of one year “from the date of the occurrence of the violation.” 15 U.S.C. § 1640(e) (1988). Moreover, several courts have held that § 1640(e) is a statute of limitations that can be tolled for fraudulent concealment. See King v. California, 784 F.2d 910 (9th Cir.1986), cert. denied, 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987); Jones v. TransOhio Savings Assn., 747 F.2d 1037 (6th Cir.1984); Davis v. Edgemere Finance Co., 523 F.Supp. 1121, 1125 (D.Md.1981) (the doctrine of fraudulent concealment could, in the proper *750 case, operate to toll the limitations period of § 1640(e)).
Importantly, though, Congress entitled the applicable section of TILA as “Jurisdiction of courts; limitations on actions.” 15 U.S.C. § 1640(e) (emphasis added). The limitations period at issue here, however, is found in a section of the statute entitled merely “Jurisdiction.” 15 U.S.C. § 1692k(d); See Hardin, 797 F.2d at 1039 (the subtitle “Jurisdiction of Courts” indicates Congress’ intention of creating a jurisdictional limitations period). Furthermore, the limitations period of § 1692k(d) is found in the same sentence that creates the federal court jurisdiction, making it reasonable to conclude that Congress intended to create a jurisdictional time limitation. See id. Finally, the only court to address this particular issue found that § 1692k(d) is jurisdictional. Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 262 (8th Cir.1992) (“We are not at liberty to disregard the jurisdictional limitations Congress has placed upon the federal courts_”). For these reasons, the Court holds that 15 U.S.C. § 1692k(d) creates a jurisdictional limitation of one year that cannot be equitably tolled. Because plaintiff Seamster brought this FDCPA action over three years after the alleged violations occurred, this claim is DISMISSED.
III. CONCLUSION
Following a de novo review of those portions of the United States Magistrate Judge’s Report and Recommendation objected to, this Court finds, as to the RICO claims, that the plaintiffs (1) in Counts I and III have adequately alleged an enterprise consisting of an association-in-fact of Falk, TranSouth and JB; (2) in Counts I and III have adequately alleged a distinct “enterprise” and “pattern of racketeering activity”; (3) in Counts II and IV have failed to adequately allege that TranSouth participated in the conduct of the affairs of Falk; and (4) in Counts I through TV have failed to adequately allege detrimental reliance on the mailings of the defendants. For these reasons, Tran-South’s motion to dismiss Counts I through IV of the Complaint is GRANTED. Falk and JB’s. motion for partial summary judgment on Counts I through TV is also GRANTED. Furthermore, the Court finds that plaintiff Seamster’s claim against JB under the FDCPA is barred by the applicable limitations period. Thus, Falk and JB’s motion for partial summary judgment as to plaintiff Seamster on this claim is GRANTED. Finally, TranSouth’s motion to dismiss the pendent state law claims in Counts VI through VIII is GRANTED. See Brandenburg, 859 F.2d at 1190 (once RICO claims have been dismissed, pendent state claims are also properly dismissed).
It is so ORDERED.

MAGISTRATE JUDGE’S REPORT AND RECOMMENDATION

PRINCE, United States Magistrate Judge.

Order of Designation

Senior United States District Judge John A. MacKenzie, by an Order entered September 27, 1993, designated the undersigned Magistrate Judge to conduct a hearing and to submit to a judge of the Court proposed recommendations for disposition by the judge of the Motion to Dismiss of defendant TranSouth Financial Corporation, filed on July 20, 1993, and the Motion for Partial Judgement on the Pleadings of defendants Charlie Falk Auto Wholesalers, Inc. and JB Collection Corporation, filed August 3, 1993.
A hearing was held on September 28,1993, at which Peter F. Herrick, Esquire, James G. Hurley, Jr., Esquire, Charles A. Johnson, Esquire, Kieron F. Quinn, Esquire, and G. Robert Blakey, Esquire, appeared on behalf of plaintiffs; Franklin A. Swartz, Esquire, Paul A. Murphy, Esquire, F. Whitten Peters, Esquire, and Christopher W. Schmeisser, Esquire, appeared on behalf of defendants Charlie Falk Auto Wholesalers, Inc. and JB Collection Corporation; and Gregory N. Stillman, Esquire, appeared on behalf of defendant TranSouth Financial Corporation.

Nature of the Case

The complaint in this case is brought by four purchasers of used cars, who also seek class certification, against the used car deal *751 er, a finance company and a collection agent. In eight counts, plaintiffs allege violations- by all defendants of the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. § 1962(a) (Count I), § 1962(c) (Count II), § 1962(d) (Counts III and IV), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e(2)(A), 1692e(10), 1692e(ll), 1692f(l) and 1692g(a)(3)-(5) (Count V)[1], the Virginia Uniform Commercial Code, Va.Code §§ 8.9-101 et seq. (Count VI), the Virginia Consumer Protection Act, Va.Code § 59.1-200 (Count VII) and common law fraud and conspiracy (Count VIII).

Statement of Alleged Facts

The complaint alleges that Charlie Falk Auto Wholesalers, Inc. (“Falk”), the used car dealer, sells used cars to customers and arranges financing using security agreements provided by TranSouth Financial Corporation (“TranSouth”), the finance company. Interest rates on the loans are as high as 30%. (Complaint ¶¶ 12-13.) Falk then assigns the loans and security agreements to TranSouth, but agrees to repurchase the loans upon default and to pay any remaining principal due. (¶ 14.) TranSouth repossesses cars upon default, using a wholly-owned subsidiary of Falk. Repossessed cars are stored at a lot leased by TranSouth from Falk. (¶ 15.) TranSouth sends notices of ■ default to the ear owners after repossession, and sends copies to Falk. Each notice advises the owner that the car can be redeemed upon payment of the deficiency, but that if the deficiency is not paid the car will be sold at a private sale. (¶ 16.) Unredeemed cars are transferred back to Falk pursuant to the repurchase agreement, and Falk resells them. (¶ 17.) Each transfer back is effected by a bid for the car at an undervalued price in relation to the original sale price and in relation to the price realized on resale. (¶ 18.)[2] The bid is the private sale, and that price is the basis for a deficiency in a later collection action. (¶ 19.)[3]
Falk then assigns the reacquired loans for collection to JB Collection Corporation (“JB”), which has common officers and directors with Falk and pursues collections only for Falk. (¶¶20, 23.)[4] JB writes a demand letter to the customer for the deficiency, which is based upon the Falk-Tran-South transfer-back price. The letter refers to the previously sent notice of default from TranSouth to the customer. (¶21.) If the customer does not pay the deficiency, JB files a collection action. (¶ 22.) The amount claimed is based upon the transfer-back price. (¶24.) All cars transferred back to Falk are resold at prices greater than the transfer-back prices, and sometimes at prices greater than the original sales prices, but surplus sums are not paid to the defaulting customers. (¶ 25.)
As to each of the four plaintiffs, the Complaint alleges in detail what is here stated generally. A used car was bought-with financing arranged by Falk, and the loan was assigned to TranSouth. Plaintiff defaulted, and the car was repossessed. TranSouth sent through the United States Mail a knowingly false notice of private sale.[5] Plaintiff did not redeem. Falk reacquired the car under the Falk-TranSouth repurchase agreement, which was not a legally sufficient sale as set forth in the TranSouth notice. The transfer price was less than the original sale price. The loan was assigned by Falk to JB for collection, and JB sent through the United States Mail a fraudulent demand letter to plaintiff stating a deficiency based upon the transfer-back price. The repossessed car was resold for several hundred dollars more *752 or less than the original sale price, but no surplus was paid to plaintiff. JB then filed an action-at-law against plaintiff, using the United States Mail, seeking judgment for an improperly alleged deficiency, plus attorney’s fee. (Plaintiff Nora Chisolm (¶¶ 26—33))[6]; (Plaintiff Tina Wilee (¶¶ 34-41))[7]; Plaintiff Laura Richards (¶¶ 42-50)[8]; (and Plaintiff Starlette Seamster (¶¶ 51-58)).[9]
It is alleged that Seamster[10] purchased her car on August 21, 1987; that the Tran-South notice of default was mailed on October 28,1988; that the JB demand letter was mailed on December 27, 1988; that JB mailed the legal action on March 16, 1989; and that the repossessed car was resold on May 20, 1989.
⅜: ⅜ :J: ⅜ * ⅜
In addition to the factual allegations summarized above, plaintiffs assert legal allegations beginning at ¶ 72 of the Complaint, some of which are recounted below.
Through the agreements between Falk and TranSouth and between Falk and JB, defendants formed an association-in-fact, which constitutes a RICO-defined enterprise engaged in illegal activities. (¶¶ 74, 103.)[11] Defendants used or invested income derived from a RICO-defined pattern of unlawful activity to operate, maintain control of, and maintain an interest in the enterprise. (¶¶ 75, 83-88, 105.) The unlawful activities included the mailing of false and deceptive notices of private sales, of deceptive demand letters, and of service of process and pleadings in improper deficiency actions. (¶ 76.) The purpose of the enterprise was to effect a revolving repossession and churning scheme. (¶ 77.)[12]
Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Tran-South has moved to dismiss Counts I through V, the federal claims, for failure to state a claim upon which relief can be granted, and to dismiss Counts VI through VIII, the pendent state claims, for lack of subject matter jurisdiction. (TranSouth Motion to Dismiss, Docket Entry # 13, filed July 20, 1993.) Defendants Falk and JB thereafter moved for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, alleging no material issue of fact exists for Counts I through IV with respect to all plaintiffs, and that no material issue of fact exists for Count V as to plaintiff Seamster. (Motion of Falk and JB for Partial Judgment on the Pleadings, Docket Entry # 19, filed August 3, 1993.)

ANALYSIS

I. The RICO Claims

The first four counts of plaintiffs’ complaint allege four theories under which the concerted activities of the defendants violated RICO and entitle plaintiffs to treble damages under the civil enforcement provision of RICO at 18 U.S.C. § 1964(c). The crux of the defendants’ arguments in favor of dismissal, distilled to their simplest form, is that the facts alleged by plaintiffs do not create any form of a RICO action but merely present a generic state law fraud scenario that *753 plaintiffs have attempted to force into a RICO claim.
Counts I through IV of the Complaint allege that the defendants committed various violations of RICO under 18 U.S.C. §■ 1962 which makes it unlawful, among other things, for any person to invest any income derived from a pattern of racketeering activity in any enterprise engaged in interstate commerce, for any person to conduct the affairs of any enterprise engaged in interstate commerce through a pattern of racketeering activity, or for any person to. conspire to so act. 18 U.S.C. § 1964(c) provides a civil cause of action in favor of persons injured in their business or property by any of these violations. These prohibitions have been the subject of countless judicial opinions attempting to interpret the requirements of the RICO statute and to define the boundaries of a civil RICO claim. Plaintiffs’ claims attempt to take advantage of the apparent state of judicial confusion and seek to alter the requirements for, and to extend the scope of, RICO’s attractive treble damages provisions. The dominating issues presented by defendants’ respective motions focus largely on the specifies of some of RICO’s more elusive requirements, with the defendants contending that the plaintiffs have severely misinterpreted both the language of the statutory provisions and the controlling eases interpreting those provisions.
RICO, codified at 18 U.S.C. §§ 1961 to 1968 as part of the federal criminal code, creates a civil cause of action in favor of individuals injured by a violation of the Act at § 1964(c).
TranSouth, Falk, and JB join together in the initial defense argument that reliance is a requisite element of a civil RICO action claiming mail fraud and that none of the plaintiffs’ RICO counts contains a sufficient allegation of reliance. Plaintiffs rely primarily on their contention that there is no required element of reliance under the circumstances presented herein and contend secondarily that the Complaint does indeed allege reliance.
The first four counts of the Complaint invoke separate causes of action under the civil remedy provisions of RICO at 18 U.S.C. § 1964(c). The primary issue presented by TranSoüth’s motion to dismiss and by Falk’s[13] motion for partial summary judgment is whether the plaintiffs have adequately alleged facts sufficient to state a civil RICO action. The arguments from all parties focus on purely legal contentions addressed solely to the adequacy of plaintiffs’ allegations in the Complaint.
Although TranSouth and Falk present largely similar arguments -in favor of their respective motions, and Falk even adopts a significant part of TranSouth’s reasoning, the complicated nature of a civil RICO action and the slightly different posture of the defendants indicate that separate consideration of the arguments is in order. Accordingly, -TranSouth’s motion to dismiss, having been filed with the Court first, will be addressed by the Court first.

STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs apd their factual allegations are taken as true. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Prudential-Bache Sec., Inc., v. Cullather, 678 F.Supp. 601, 603 (E.D.Va.1987). The complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 356 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Bruce v. Riddle, 631 F.2d 272, 273-74 (4th Cir.1980). A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of recovery is very remote. Scheuer, 416 U.S. at 236, 94 S.Ct. at 1686. A complaint that fails to allege an essential element of a complaint is subject to dismissal. See, e.g., Menasco, Inc. v. Wasserman, 886 F.2d 681, 682, *754 684-85 (4th Cir.1989) (RICO claim failed to allege a pattern of racketeering activity).

A. THE RICO CLAIMS AGAINST TRANSOUTH

In support of its motion to dismiss, Tran-South argues that plaintiffs’ RICO claims should be dismissed for a number of fatal deficiencies. TranSouth first asserts that all four of the RICO counts fail to allege the required elements of reliance, proximate cause, and actual injury. (TranSouth Mem. Supp.Mot. to Dismiss, Docket Entry # 14, received July 20, 1998, at III.A.1, 2, and 3 (Docket Entry # 14)). Additionally, Tran-South argues that Count I fails to allege any difference between the “enterprise” and the “pattern of racketeering activity”; that Count II fails to allege that TranSouth, the “person”, directed the affairs of Falk, the “enterprise”; and that Counts III and IV fail to allege a RICO conspiracy.

1. RELIANCE

TranSouth first makes the general argument that all four RICO claims should be dismissed because the Complaint fails to allege any of the three essential elements of standing prescribed by 18 U.S.C. § 1964(c). TranSouth argues that to state a civil RICO claim, a plaintiff must allege that he detrimentally relied on the predicate acts of racketeering activity, that the predicate acts were the proximate cause of injury to the plaintiff, and that he suffered actual injury. Arguing that there is no “reliance” element required, the plaintiffs claim the Complaint adequately alleges proximate cause and actual injury and therefore meets the standing requirements of § 1964(c). Beyond the various arguments concerning standing, TranSouth argues further that each Count of the Complaint is individually deficient for independent reasons, and plaintiffs present arguments to the contrary.
For all but their respective “reliance” arguments, both plaintiffs and TranSouth agree on the basic elements required to adequately plead a civil RICO action. The arguments on both sides focus on opposing characterizations of the Complaint itself, rather than on the necessary elements of a complaint. Their reliance arguments, on the other hand, focus exclusively on the question of whether reliance is required at all. Both parties seem to be in agreement, and the Court so finds, that the Complaint does not allege that the plaintiffs detrimentally relied on the predicate acts of racketeering activity. Despite all the complicated intricacies associated with adequately pleading a civil RICO complaint, the ultimate issue controlling TranSouth’s motion to dismiss is solely whether reliance must be alleged to state a civil RICO cause of action.
RICO, codified at 18 U.S.C. §§ 1961 to 1968, is a somewhat unusual statute in that it is a part of the federal criminal code, yet it expressly creates a civil áction in favor of individuals injured by a violation of the act. Specifically, the Act provides:
Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney’s fee.
18 U.S.C. § 1964(c) (emphasis added). The civil RICO claims at issue here are based on alleged violations of § 1962(a), (c), and (d), which all require the plaintiffs to show that the defendants engaged in a “pattern of racketeering activity.”[14] RICO comes complete with its own definitions section, which defines “racketeering activity” to include, inter alia, *755 any act indictable under certain provisions of the federal criminal code, including mail fraud under 18 U.S.C. § 1341. 18 U.S.C. § 1961(1). The “by reason of’ language essentially serves as a prerequisite to suing under RICO which, as TranSouth points out, the courts invoke as a standing requirement to limit the reach of RICO. The elements of criminal mail fraud are (1) a scheme to defraud and (2) the mailing of a letter for the purpose of executing the scheme. See, e.g., Pereira v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 362-63, 98 L.Ed. 435 (1954); United States v. Vaughn, 797 F.2d 1485, 1492-93 (9th Cir.1986).
The specific issue presented here is therefore whether a person injured in his business or property by reason of a pattern of racketeering activity, namely mail fraud, must allege that the injury was caused by his detrimental reliance on the pattern of mail fraud. The fate of the litigants therefore depends on the interpretation of the “by reason of’ requirement of § 1964(c), and there is no lack of ease law addressing this issue.
The Supreme Court has not, however, yet addressed this precise issue, but the Court has delivered several opinions interpreting other aspects of RICO. The Supreme Court has interpreted the “by reason of’ language of § 1964(c) as creating a standing requirement, wherein a “plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.” Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496-97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).
TranSouth primarily relies on two Fourth Circuit cases, Brandenburg v. Seidel, 859 F.2d 1179 (1988), and Caviness v. Derand Resources Corp., 983 F.2d 1295 (1993), in support of its argument that reliance is required to state a RICO cause of action using mail fraud as the predicate act. In opposition, plaintiffs insist that these cases are distinguishable, offering a multitude of cases from a variety of circuits that, plaintiffs assert, hold that reliance is not required.
As summarized by TranSouth, Brandenburg involved depositors in the First Maryland Savings and Loan Association (“FMSL”) who brought an action after FMSL went insolvent and went into receivership. The suit named two classes of defendants: (1) officers and directors of FMSL; and (2) officers and directors of the Maryland Savings-Share Insurance Corporation (“MSSIC”), as well as the savings and loans with which they were associated. The plaintiffs had a number of grounds upon which to sue the officers and directors of FMSL, including allegations that they had misappropriated funds and engaged in self-dealing. The only claim the plaintiffs had against the MSSIC defendants, however, was that they had committed mail and wire fraud by using the mails and interstate wires to make misrepresentations about the security of deposits at FMSL. Such misrepresentations, according to the plaintiffs, were to induce persons to deposit money in the savings and loan. Because they were being deprived of their savings and interest, the plaintiffs claimed that they were entitled to recover against both the FMSL defendants and the MSSIC defendants.
The district court dismissed the RICO claim against the defendants for failure to state a claim, and the Fourth Circuit affirmed the dismissal. Brandenburg, 859 F.2d at 1183-84. TranSouth contends that the district court’s dismissal was based on, among other grounds, the failure of the plaintiffs to allege sufficiently their reliance on the alleged predicate acts of mail and wire fraud and that the Fourth Circuit chose to affirm solely on this ground. Arguing that the present case is readily distinguishable and TranSouth’s rebanee misplaced, plaintiffs characterize the Brandenburg decision as one dealing principally with the issue of proximate cause.
Both TranSouth and plaintiffs quote, at least in part, a particularly relevant footnote in the Fourth Circuit’s Brandenburg opinion, one which warrants reproduction in full here:
The defendants correctly point out that while, as we have noted, it is not necessary to establish detrimental rebanee by the victim in order to make out a violation of the federal mail fraud statute, see Armco [Industial Credit Corp. v. SLT Warehouse Co., 782 F.2d 475 (5th Cir.1986) ] at 481-82, such rebanee is necessary to estabbsh *756 injury to business or property “by reason of’ a predicate act of mail fraud within the meaning of § 1964(c).
Brandenburg, 859 F.2d at 1188 n. 10. Plaintiffs assign undue significance to the first part of this quote and focus a significant part of their argument on bolstering their position that the criminal mail fraud statute entails no element of reliance. As plaintiffs’ exhaustive survey of the cases demonstrates, this position is well established and indisputable. The criminal mail fraud statute, 18 U.S.C. § 1341, contains no element of reliance. TranSouth concedes as much. Plaintiffs’ arguments do not advance their present position, however, because they have established only that criminal mail fraud entails no element of reliance. Unfortunately for the plaintiffs, this is a civil case under a statute that creates a civil cause of action against persons who violate the provisions of 18 U.S.C. § 1962, a criminal statute that includes a prohibition against certain methods of violating the criminal mail fraud statute.
The statute creating the civil cause of action, 18 U.S.C. § 1964(c), also contains a standing element for civil plaintiffs that requires an allegation that the injury be “by reason of a violation of § 1962.” The “by reason of’ requirement applies only to civil plaintiffs and is an additional element of the civil cause of action, an element that the government need not meet when prosecuting criminal defendants under either the mail fraud statute or RICO itself. Although it may seem ironic that a civil form of action predicated on a criminal statute places a higher burden on the civil plaintiffs than is placed on the government’s pursuit of criminal prosecutions under RICO, the scheme reflects a policy choice made by Congress that the courts are obligated to respect.
Having stated the obvious proposition that a civil RICO plaintiff must show that his alleged injury was caused “by reason of’ a violation of § 1962, the remaining issue concerns the proper interpretation of the “by reason of’ language in the context of a RICO action using mail fraud as the predicate offense. TranSouth argues that three standing requirements spring from the “by reason of’ requirement: plaintiff must have detrimentally relied on the predicate acts of racketeering activity; the predicate acts must be the proximate cause of injury to the plaintiff; and the plaintiff must suffer actual injury. Plaintiffs would seem to agree that proximate cause and actual injury are required, contesting only the reliance requirement.
As TranSouth contends, Brandenburg explicitly states that “detrimental reliance by the victim ... is necessary to establish injury to business or property “by reason of’ a predicate act of mail fraud within the meaning of § 1964(c).” 859 F.2d at 1189 n. 10. Brandenburg is a Fourth Circuit case, controlling in this court, and the Fourth Circuit could not have stated the proposition more clearly. Plaintiffs correctly characterize Brandenburg as a “proximate cause case,” and the decision did not, however, depend directly on the reliance question, contrary to TranSouth’s contention. The district court in Brandenburg dismissed the RICO count against the MSSIC defendants for failure of the plaintiffs to allege a legally sufficient pattern of racketeering activity. Brandenburg v. First Maryland Savings and Loan, Inc., 660 F.Supp. 717, 727 (D.Md.1987); 859 F.2d at 1183, 1184, and 1186. The Fourth Circuit affirmed the dismissal, but on the alternative ground that the plaintiff had failed to allege the necessary “causation.” 859 F.2d at 1184.
A close analysis of Brandenburg clearly indicates that the “reliance” and “proximate cause” elements necessary to state a civil RICO cause of action are closely related. Failure to allege reliance on the allegedly fraudulent mailings prevents a finding that the alleged injury was adequately caused by the acts of mail fraud in a manner satisfying the legal “proximate” cause requirement generally applicable to tort liability, including that statutorily created under 18 U.S.C. § 1964(c). Brandenburg, 859 F.2d at 1189. The Fourth Circuit noted that the proximate cause requirement involves a policy determination as to “whether the conduct in question has been so significant and important a cause that the defendant should be held responsible.” Id., quoting Prosser and Keeton on Torts, § 42, at 272 (5th ed.1984). The policy determination involved in deciding *757 whether a particular act of mail fraud has been “the reason of’ and has proximately caused an economic injury within the meaning of § 1964(c) is simplified and clarified by the reliance requirement. Plaintiffs alleging a civil RICO claim using mail fraud as the predicate act must allege that they relied on the allegedly fraudulent mailing in some way causally related to their injury. In the absence of reliance, proximate cause will also be lacking, yielding a fatally deficient complaint.
In a different context, involving a violation of the Securities Act of 1933 as the predicate act creating civil RICO liability, the Fourth Circuit has reiterated the requirement that “a claim under [civil] RICO requires both reliance and damage proximately caused by the violation.” Caviness v. Derand Resources Corp., 983 F.2d 1295 (4th Cir.1993), citing Holmes v. Securities Investor Protection Corp., — U.S.-,-, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992) and Brandenburg v. Seidel, 859 F.2d 1179, 1187 & 1188 n. 10 (4th Cir.1988). Caviness involved a claim by a group of investors in oil and gas partnerships against the companies involved in developing and marketing the partnerships as investments. Plaintiffs’ claims were based on various securities law violations, civil RICO, and common law fraud. Caviness, 983 F.2d at 1298. The Caviness plaintiffs alleged violations of the Securities Act of 1933 as the predicate acts giving rise to their civil RICO claim, rather than mail fraud as alleged by plaintiffs in the instant case. The analysis, however, is virtually identical. In Caviness, the Fourth Circuit held that even though the Complaint adequately alleged a violation of the Securities Act, that alone does not state a civil claim for RICO under 18 U.S.C. § 1964(c). Id. at 1305. Likewise, the present Complaint adequately alleges a mail fraud violation, but more than that is required to state a civil RICO claim. Regardless of the predicate act employed, the Complaint must allege “reliance and damage proximately caused” by the violation of civil RICO. Caviness, 983 F.2d at 1305.
Having exhaustively argued against the application of a reliance requirement, plaintiffs present a token argument to assert that they have indeed alleged a form of reliance. (Substitute Brief on Plaintiffs Opposition to TranSouth’s Motion to Dismiss, Docket Entry # 18, at 12-13 (Docket Entry # 18)). Plaintiffs argue that they innocently relied on the legitimacy of the notices of private sale sent by TranSouth and further insist that they must be able to rely on TranSouth “not to turn the repossession process into a scam.” Id. at 13. This argument shrewdly inverts the meaning of the reliance requirement, completely circumventing the required allegation that the fraudulent mailings induced them to act in a manner that caused them detriment. Nevertheless, plaintiffs’ argument concedes that they would not have redeemed the cars even if they had known that the process was a sham and concedes further that the plaintiffs cannot make such an allegation. Id. In short, plaintiffs did not, and can not, allege that they acted in reliance on the TranSouth mailings. Plaintiffs’ “reliance” argument amounts to no more than a general complaint that Tran-South participated in a massive fraud, an illegal and profitable scam, that took advantage of the innocent plaintiffs’ reliance on the apparent legitimacy and legality of the operation. Plaintiffs have not alleged that they detrimentally relied on anything connected to the allegedly fraudulent mailings, and absent such reliance, the bare allegation of a mail fraud violation does not support a civil RICO cause of action.
Recently decided and on point, Brandenburg and Caviness provide controlling and more than adequate precedent for dismissing plaintiffs’ RICO claims against TranSouth. Plaintiffs’ exhaustive discussion of the decisions of the other circuits and of the policies underlying civil RICO is therefore unavailing and unpersuasive, although it is interesting to note that the vast majority of the Circuits that have addressed this issue have held that reliance is an element of a civil RICO action through the “by reason of’ language of 18 U.S.C. § 1964(e). See Note, Whatever Happened to Durland?: Mail Fraud, RICO, and *758 Justifiable Reliance, 68 Notre Dame L.Rev. 383 (1992).[15]
Accordingly, TranSouth’s Motion to Dismiss should be GRANTED and Counts I through IV of the Complaint should be DISMISSED as to TranSouth for the foregoing reasons.

2. PROXIMATE CAUSE

TranSouth’s second general ground supporting its--motion to dismiss argues that the Complaint fails to allege the required element of proximate cause. (Docket Entry # 14 at 15.) While plaintiffs do not dispute the proximate cause requirement, they argue that the Complaint sufficiently pleads proximate cause. (Docket Entry # 18 at 13.) Resolution of this issue therefore centers on the proper characterization of the Complaint, in light of the decisions construing the proximate cause requirement.
TranSouth’s argument first discusses in general the legal concept of proximate cause in a RICO context, noting that proximate cause is the second element of the standing requirements that the courts have interpreted 18 U.S.C. § 1964(c) to require. Tran-South notes that the Supreme Court has held that a RICO plaintiff must allege and prove that his injury was proximately caused by a defendant’s unlawful acts in order to have standing to sue under 18 U.S.C. § 1964(c). Holmes v. Securities Investor Protection Corp., — U.S. -, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The Court discussed the proximate cause requirement:
Here we use “proximate cause” to label generically the judicial tools used to limit a person’s responsibility for the consequences of that person’s own acts. ' At bottom, the notion of proximate cause reflects ideas of what justice demands, or of what is administratively possible and convenient.
Id. at-, 112 S.Ct. at 1318 (citations omitted). TranSouth contends that this means that a “RICO plaintiff must plead specific predicate acts of racketeering and that those acts were the proximate cause of plaintiffs’ injury.” (Docket Entry # 14 at 15.)
Quoting from Brandenburg, TranSouth argues that plaintiffs are required to allege more than a cause in fact connection to meet the standard for showing proximate cause:
A cause-in fact connection, standing alone, does not suffice to establish liability.... [Cjausation principles generally applicable to tort liability must be considered applicable. These require not only cause in fact, but “legal” or “proximate” cause as well....
Brandenberg v. Seidel, 859 F.2d 1179, 1189 (4th Cir.1988); see also Caviness v. Derand Resources Corp., 983 F.2d 1295, 1305 (4th Cir.1993). TranSouth notes finally that proximate cause is a question of law, to be decided by the Court, and the factors the Court is required to consider are “the foreseeability of the particular injury, the intervention of other independent causes and the factual directness of the causal connection.” (Docket Entry # 14 at 16, quoting Brandenberg, 859 F.2d at 1189.)
Plaintiffs also quote extensively from the Fourth Circuit’s opinion in Brandenburg and seem to be in general agreement with Tran-South’s description of the proximate cause concept. (Docket Entry # 18 at 15.) The parties sharply differ, however, in their respective interpretations of the governing legal standards as applied to the facts alleged in the Complaint. TranSouth asserts that the RICO claims must be dismissed unless plaintiffs allege “facts adequate to show that *759 the plaintiffs relied to their detriment on the alleged predicate acts.” (Docket Entry # 14 at 18.) Plaintiffs aggressively attack this position and cite a number of cases that, they claim, involve proximate cause without detrimental reliance. (Docket Entry # 18 at 13-15.)
Plaintiffs’ insistence that they have adequately alleged proximate cause underscores the deficiency in their earlier reliance argument. Plaintiffs continue to claim that reb-anee is not required to maintain their RICO action, emphasizing the necessary role that the TranSouth mailings played in the overall scheme. Plaintiffs’ emphasis, however, is misguided. Plaintiffs claim that without the TranSouth notice of private sale “the defendants’ conspiracy could not go forward. The link to plaintiffs’ and the class’ injury is thus both clear and direct.” (Docket Entry # 18 at 15.) The “link” may well be “clear and direct,” but plaintiffs nevertheless have failed to meet the legal standard of proximate cause required under civil RICO.
A civil RICO action requires a private plaintiff to allege he suffered injury to his. business or property, that defendants committed certain predicate acts of racketeering in violation of § 1962, and that “this injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962.” Brandenburg, 859 F.2d at 1187. Assuming the plaintiffs have suffered injury and defendants have committed the requisite predicate acts of mail fraud, the simple question is whether the defendants’ acts of mail fraud caused plaintiffs’ injuries. To survive this motion to dismiss, plaintiffs must have alleged an adequate causal nexus between their injury and the alleged predicate acts of mail fraud. See Brandenburg, 859 F.2d at 1187.
As the arguments of the parties demonstrate, the distinction between “reliance” and “proximate cause” in a civil RICO action based on predicate acts of mail fraud is subtle and largely of semantic value. Plaintiffs themselves recognize that the determination of proximate cause involves policy considerations, and to that end the Fourth Circuit, for civil RICO cases predicated on reliance, has discussed the proximate cause concept in terms of reliance. The defendant simply will not be held liable for all injuries that can be connected to his perpetration of various acts of mail .fraud; the victim must show that his injuries were caused by the mail fraud. To adequately allege proximate causation under the circumstances presented here, plaintiffs must allege that their reliance on the TranSouth acts of mail fraud caused them injury.
Plaintiffs do not meet their burden, and their argument clearly reveals the deficiency in their action. Plaintiffs characterize Tran-South’s notices of private sale as the “crucial first step” in the collective abuse of the repossession process and as an “essential element in the scheme.” (Docket Entry # 18 at 15.) Plaintiffs then claim that the scheme caused them injury. Plaintiffs’ logic, however, to draw any direct causal connection between the alleged predicate acts of mail fraud and their injury, reasoning generally that, since the mail fraud was crucial to the succéss of the overall scheme and the overall scheme caused the injury complained of, the mail fraud proximately caused the injury. (See Docket Entry # 18 at 14-15.) This connection is no more than' an attenuated cause in fact connection, one that is not significant enough or important enough to find TranSouth responsible for the alleged injury. See Brandenburg, 859 F.2d at 1189. The TranSouth notices complained of here were not only necessary to the scheme, they were required by Virginia law governing the repossession process. See Va.Code § 8.9-504. Plaintiffs claim that the notices were fraudulent for failing to reveal the intended transfer of the repossessed cars back to Falk. Taken in the light most favorable to the plaintiffs, the allegations state a scheme whose fraudulent operation arises after the notices of private sale have been sent and not acted upon. The required notices informed the plaintiffs of their opportunity to pay off the deficiencies that gave TranSouth the right to repossess their cars. (Complaint ¶ 16.) Plaintiffs do not claim to have been defrauded by the repossession itself, and the Complaint fairly concedes that the repossessions were legitimately instituted after each of the plaintiffs defaulted on their respective *760 loans. (See Complaint ¶¶ 15-16.) It is only the execution of the private sales, which were conducted after the notices were sent, that are alleged to have been conducted fraudulently. The notices themselves can not be said to have been the proximate cause of any injury complained of by the plaintiffs.
Accordingly, the Complaint fails to adequately allege that TranSouth has been the proximate cause of plaintiffs’ alleged injuries, and Counts I through IV should be DISMISSED for this additional reason.

3. INJURY

RICO’s final standing requirement is that a civil plaintiff must allege damages in that he has been “injured in his business or property.” 18 U.S.C. § 1964(e). TranSouth argues that “the plaintiffs never allege that they have incurred actual damages.” (Docket Entry # 14 at 20.) Plaintiffs respond by arguing that each named plaintiff lost “thousands of dollars” because they “lost their cars, their equity in the ears and any value in the cars over and above what was owed on the loan.... Damages in each case are obvious and easily calculated.” (Docket Entry # 18 at 16-17.)
Although the Complaint completely fails to allege that any of the named plaintiffs spent any money whatsoever, the applicable standard for ruling on a motion to dismiss is to construe the Complaint liberally in favor of the plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Prudential-Bache Sec. Inc., v. Cullather, 678 F.Supp. 601, 603 (E.D.Va.1987). Plaintiffs do allege that the defendants have “retained money which is rightfully due plaintiffs and Class members, and [ ] collected] money not properly due from plaintiffs or Class members.” (Complaint ¶ 90; see also ¶¶ 24-25.)
Plaintiffs have alleged the bare minimum injury necessary to survive dismissal for failure to allege damages. Although the Complaint provides a detailed description of the mechanics of the alleged scheme, the plaintiffs only imply that they actually paid any money whatsoever. The Complaint alleges that the plaintiffs “bought” the vehicles at issue from Falk and that Falk “arranged financing” for the purchases. (Complaint ¶¶ 26-27, 34-35, 42^3, and 51-52.) Nowhere, however, does the Complaint allege that the named plaintiffs put any money down, or even made any payments on the loans. Plaintiffs basically complain that the defendants repossessed the vehicles and then resold them for more than the plaintiffs owed on their respective loans, and that the plaintiffs are entitled to, but never received, this surplus. Accepting the allegations in the light most favorable to the plaintiffs, the plaintiffs have alleged “injury to business or property” within the meaning of § 1964(c).

4. COUNT I—§ 1962(a)

Count I alleges that the defendants violated 18 U.S.C. § 1962(a) by engaging in a pattern of racketeering activity and investing income from that activity in an enterprise engaged in illegal activities. (Complaint ¶¶ 74-76.) TranSouth argues that Count I is fatally deficient because the allegations fail to distinguish between the “enterprise” and the “pattern of racketeering activity” as required by § 1962(a). (Docket Entry # 14 at 22.) Plaintiffs respond by arguing that they have indeed alleged the existence of an enterprise that has an existence separate and apart from the pattern of racketeering of activity and that “[a]ssoeiations-in-fact may be RICO enterprises.” (Docket Entry # 18 at 17-18.)
Paraphrasing the relevant statutory language, § 1962(a) makes it unlawful for any person who has received any income from a pattern of racketeering activity to invest that income in any enterprise. The Supreme Court addressed the requirements of § 1962(a) in United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and held that the “enterprise” must exist separate and apart from the pattern of racketeering activity in which it engages. The Court, in discussing the distinction, defined “enterprise” as “a group of persons associated together for a common purpose of engaging in a course of conduct.” Turkette, 452 U.S. at 583, 101 S.Ct. at 2528. To define “pattern of racketeering activity,” however, the Court referred directly to the definitions section of RICO. RICO defines “racketeering activity” as, inter alia, “any act which is indictable under ... section 1341 (relating to *761 mail fraud)” of the U.S.Code. 18 U.S.C. § 1961(1). A “pattern” is at least two such acts occurring within a ten year period. 18 U.S.C. § 1961(5); Turkette, 452 U.S. at 580, 101 S.Ct. at 2527.
“The [enterprise] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The [pattern of racketeering activity] is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The “enterprise” is not the “pattern of racketeering activity”; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.
Turkette, 452 U.S. at 583, 101 S.Ct. at 2528-29. Although Turkette involved a criminal prosecution under RICO, a civil RICO plaintiff is also required to prove an enterprise and a pattern of racketeering activity.
The Fourth Circuit has reviewed this issue twice since the Supreme Court’s decision in Turkette and has held that RICO requires proof that “the association exists separate and apart from the pattern of racketeering activity in which it engages.” United States v. Tillett, 763 F.2d 628, 631 (4th Cir.1985); United States v. Griffin, 660 F.2d 996, 999 (4th Cir.1981). In Tillett, the Fourth Circuit noted that there must be evidence that “the organization had an existence beyond that which was necessary to commit the predicate crimes.” 763 F.2d at 632.
Both Tillett and Griffin involved “association-in-fact” enterprises which clearly may constitute RICO enterprises, as alleged by plaintiffs in Count I of the Complaint. Plaintiffs argue that the Complaint alleges the existence of an association-in-fact enterprise that is entirely separate from the pattern of racketeering activity in which it engages. (Docket Entry # 18 at 18.) Plaintiffs contend that the enterprise has a structure that exists separate from the pattern of racketeering activity, but then offer a characterization of this “structure” that merely separates the various functions of the participants in the overall scheme. Plaintiffs argue that the fact that each of the corporate defendants performs a different task is “evidence of a separate structure.” (Id.) TranSouth argues that the Complaint completely fails to allege that the association-in-fact enterprise has any existence beyond that necessary to commit the predicate acts of mail fraud, or even to allege that the enterprise does anything other than commit predicate acts as part of a pattern of racketeering. (Docket Entry # 14.)
Plaintiffs argue that the “enterprise is alleged to be ongoing and to exist in intervals between the actual commission of predicate acts.” (Docket Entry # 18 at 18-19.) Citing an Eighth Circuit case, plaintiffs assert that the relevant inquiry is “whether the enterprise encompasses more than what is necessary to commit the predicate offenses.” Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 770 (1992).
Although TranSouth argues that the Complaint focuses entirely on the illegitimate association among the corporate defendants, this does not appear to be an entirely accurate characterization of the Complaint. The Complaint alleges that Falk sells used cars, finances many of these sales using security agreements, and then assigns the loans and security interests to TranSouth, agreeing to repurchase the loans and pay TranSouth the remaining principal in the event of customer default. (Complaint ¶¶ 11, 12, 14.) The Complaint implies that all of the Falk loans assigned to TranSouth contain the repurchase provisions. Upon default, TranSouth repossesses the car, sends the customer a “notice of private sale,” and transfers the car back to Falk at a grossly undervalued price pursuant to the repurchase agreement, “never” selling the repossessed car at commercially reasonable private sales. (Complaint ¶¶ 15-18.) “In each case,” JB sends a false demand letter to the customer and “[i]n every action brought by JB against every Falk consumer, the amount of the alleged deficiency” is based on the private sale price. (Complaint ¶¶ 21, 24.) “In every case” Falk re *762 sells the car at a price much greater than the transfer price. (Complaint ¶ 25.)
TranSouth argues that the Complaint never alleges that the enterprise engages in activities other than those necessary to further this alleged fraudulent scheme. (Docket Entry # 14.) While this may be a fair characterization of the Complaint, the Complaint can be interpreted to allege a legitimate association among the corporate defendants. Indeed, plaintiffs’ counsel explained at oral argument that the “association-in-fact enterprise” consists of both the legitimate finance and repossession activities of the defendants as well as the illegitimate and abusive performance of those activities. Although not directly alleged, the Complaint can be construed to allege a separate, legitimate business association among the defendants, who engage in a pattern of racketeering activity as a part of this business association. Accordingly, plaintiffs have alleged a sufficient “enterprise” separate and apart from the “pattern of racketeering activity” to satisfy the pleading requirements under § 1962(a).

5. COUNT II—§ 1962(c)

Count II alleges that the defendants violated § 1962(c) in that TranSouth is associated with and employed by Falk and “participates, directly and indirectly, in the conduct of [Falk]’s affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(1), consisting of multiple acts of mail fraud.” (Complaint ¶ 97.) Falk is alleged to be the “enterprise,” while TranSouth and JB are alleged to be the “persons” associated with and employed by the enterprise. (Complaint ¶¶ 95-96.) § 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity or collection of unlawful debt.
The issue presented by TranSouth’s motion to dismiss as to Count II is whether plaintiffs have alleged adequate participation on Tran-South’s part in the affairs of Falk, the RICO enterprise, to satisfy the “operation or management” test explicitly adopted by the Supreme Court for applying § 1962(c). Reves v. Ernst & Young, — U.S.-, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).
TranSouth and plaintiffs both discuss Reves at length, and the Court’s opinion offers significant guidance for determining the adequacy of the allegations in Count II. Reves involved an accounting firm hired by a Farmer’s Co-op to conduct an audit of the Co-op’s financial statements. Reves, — U.S. at-, 113 S.Ct. at 1167. The Co-op eventually failed and filed for bankruptcy, and the trustee in bankruptcy filed suit naming a number of defendants, including the accounting firm. Id. at -, 113 S.Ct. at 1168. The claims against all other defendants having been decided or settled, the Court in Reves was presented with the narrow question of whether the accounting firm could be held liable under § 1962(c) when its only involvement with the Co-op was the performance of the audit. The accounting firm failed to explicitly inform the Co-op’s directors that the value of one of the Co-op’s most significant assets should be set significantly lower than it appeared on company records. For purposes of § 1962(c), the Coop was viewed as the “enterprise” and the accounting firm as the “person” who was alleged to have participated in the conduct of the affairs of the enterprise.
The Court held that the accounting firm had not participated in the conduct of the Coop’s affairs sufficiently to hold it liable under § 1962(c). Reves, ■— U.S. at-, 113 S.Ct. at 1174. In so holding, the Court extensively discussed the application of the language of § 1962(c), concluding that § 1962(c) requires some “participation in the operation or management of the enterprise itself.” Id. at -, 113 S.Ct. at 1170. The Court opined that the “operation or management” test expresses the participation requirements of § 1962(c) in a formulation that is “easy to apply.” Id.
Applying this test, the question here is whether TranSouth is alleged to have participated in the operation or management of Falk. For purposes of Count II, Falk itself is alleged to be the “enterprise,” rather than the assoeiation-in-fact among the defendants. The focus is therefore on the level of Tran- *763 South’s alleged participation in the affairs of Falk itself, rather than on TranSouth’s participation in the alleged RICO scheme. The Complaint follows the language of the statute and makes the conclusory allegation that “TranSouth participates, directly and indirectly, in the conduct of [Falk]’s affairs through a pattern of unlawful activity ... consisting of multiple acts of mail fraud....” Complaint ¶ 97.
TranSouth contends that it is an “outsider” to Falk’s affairs and, under Reves, “an outsider cannot be held hable [under § 1962(c) ] unless it directs the affairs of the RICO enterprise.” (Docket Entry # 14 at 27.) TranSouth further contends that it is not alleged to have participated in the operation or management of Falk’s affairs.
Plaintiffs respond that “TranSouth is clearly charged with directing the [Falk] enterprise to its preexisting goal” by doing such things as mailing the required notices, initiating repossession, hiring a towing company, and acting with Falk to set artificially low transfer prices together with Falk. (Docket # 18 at 21.) Plaintiffs urge the conclusion that these types of activities “evidence deci-sionmaking for the enterprise” and are “the kind of decisionmaking, direction and management that would be expected” of a corporate co-conspirator, qualifying TranSouth as one who “operates or manages” Falk’s affairs. Id.
As discussed above, the Reves opinion focused extensively on the application of § 1962(c), and that discussion is useful in resolving the adequacy of the allegations in Count II.
In order to “participate, directly or indirectly, in the conduct of such enterprise’s affairs,” one must have some part in directing those affairs. Of course, the word “participate” makes clear that RICO liability is not limited to those with primary responsibility for the enterprise’s affairs, just as the phrase “directly or indirectly” makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise’s affairs is required. The “operation or management” test expresses this requirement in a formulation that is easy to apply.
Reves, — U.S. at-, 113 S.Ct. at 1170 (emphasis added, footnote omitted). The Court also addressed the potential liability of “outsiders,” persons having no official position within the enterprise. The Court stated that § 1962(c) does not reach “complete” outsiders, but added that “‘outsiders’ may be liable under § 1962(c) if they are ‘associated with’ an enterprise and participate in the conduct of its affairs—that is, participate in the operation or management of the enterprise itself.” Id. at-, 113 S.Ct. at 1174. TranSouth’s contention that outsiders cannot be held hable unless they “direct” the affairs of the enterprise is therefore an inaccurate interpretation of the Reves opinion. Tran-South is clearly alleged to be “associated with” Falk, so it may be liable if it participated in the operation or management of the affairs of Falk itself.
Nevertheless, a careful reading of the Complaint, in the light of plaintiffs’ arguments against dismissal, reveals that plaintiffs have not alleged that TranSouth participated in the operation or management of Falk’s affairs. Rather, Count II basically alleges that TranSouth, Falk, and JB participated jointly, as relatively independent corporate entities, in a scheme that engaged in a pattern of racketeering activity. TranSouth is more appropriately characterized as a partner in this scheme, participating in the operation and management of the scheme, rather than the affairs of Falk. Plaintiffs must allege that TranSouth participated in the conduct of Falk’s affairs, not just its own affairs. See Reves, — U.S. at -, 113 S.Ct. at 1174. Under Count II, plaintiffs have alleged that TranSouth was essential to the success of the overall racketeering operation, having been “associated with [Falk] for purposes of effecting the purposes of the repurchase agreement and the car churning scheme.” (Complaint ¶ 97.) The Complaint fails, however, to allege in any way that TranSouth participated in the affairs of Falk.[16]
*764 For this additional reason, Count II should be DISMISSED as to Falk.

6. Counts III & IV—RICO CONSPIRACY

Counts III and IV of the Complaint allege that the defendants conspired to violate 18 U.S.C. §§ 1962(a) and (c), respectively, by committing predicate acts of mail fraud. (Complaint ¶¶ 105, 111.) Count III parallels Count I of the Complaint, and Count IV parallels Count II. Plaintiffs allege in Count III that TranSouth and the other defendants
conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to operate, maintain control of, and maintain an interest in the enterprise through ... multiple instances of mail fraud in violation of 18 U.S.C. § 1341.
(Complaint ¶ 105.) For purposes of Count. Ill, the enterprise is defined as an association-in-fact formed by TranSouth and Falk and is the same as the enterprise alleged for purposes of Count I. (Complaint ¶ 103.)
RICO contains a separate conspiracy provision, at 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate any of the substantive RICO provisions, set forth in §§ 1962(a), (b), and (c). Having alleged violations of the substantive provisions of §§ 1962(a) and (c) in Counts I and II, respectively, plaintiffs allege in Counts III and TV that the defendants conspired to violate §§ 1962(a) and (c).
The Fourth Circuit has discussed the requirements for pleading a RICO conspiracy and has held that the plaintiffs must allege that each defendant has
by his words or actions ... objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate acts.
United States v. Truglio, 731 F.2d 1123, 1133 (4th Cir.1984). A RICO conspiracy is a specific application of the basic 18 U.S.C. § 371 conspiracy, involving two conglomerations of people—the conspiracy and the enterprise. See United States v. Neapolitan, 791 F.2d 489, 500 (7th Cir.1986). The plaintiffs must establish the existence of both “the conspiracy and the enterprise and, in those cases where the enterprise is alleged to be an illegal association-in-fact, proof of one is not sufficient to allow an inference of the existence of the other.” Id. at 500. “A RICO conspiracy, like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred from the circumstances. Id. at 501 (citations omitted).
In discussing the requirements for establishing a conspiracy, the Fourth Circuit "has said:
The elements necessary to support a conspiracy conviction include an agreement among the defendants to do something which the law prohibits; knowing and willing participation by the defendants in the agreement; and an overt act by the defendants in furtherance of the agreement.... Knowledge and participation may be proved by circumstantial evidence.
United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987), citing United States v. Norris, 749 F.2d 1116, 1121 (4th Cir.1984), cert. denied 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 496 (1985). A defendant violates the RICO conspiracy provision “when he or she enters into an agreement with knowledge that the goal of the conspiracy is the commission of a RICO violation, that is to ‘conduct or participate in the affairs of an enterprise through a pattern of racketeering activity.’ ” Neapolitan, 791 F.2d at 492.
The adequacy of the plaintiffs’ conspiracy counts thus depends not only on whether the *765 Complaint contains an allegation of an agreement among the defendants, but also on whether this agreement was to violate the substantive provisions of RICO. The adequacy of Count III is therefore directly related to the adequacy of Count I, as Count IV is to Count II.
Count III alleges that the defendants have “conspired” to violate § 1962(a). (Complaint ¶¶ 105, 106.) Count IV alleges that the defendants “conspired” to violate § 1962(c). Although these allegations employ conclusory language, they are sufficient, when read in conjunction with the other allegations in the Complaint, to find that the plaintiffs have alleged an “agreement” to violate the substantive RICO provisions.
Because Count I has been found to have adequately alleged an association-in-fact among the corporate defendants, Count III also adequately alleges a conspiracy to violate § 1962(a) for purposes of § 1962(d). Nevertheless, as discussed previously, plaintiffs have failed to satisfy the standing requirements for bringing a civil RICO action under § 1964(c).
In contrast, because Count II has been found to have failed to state a claim as to TranSouth under § 1962(c), Count IV must also fail. Count IV alleges a conspiracy to violate § 1962(c), and depends on the same “enterprise” allegation as Count II. (Complaint ¶¶ 97 and 111.) Because the “enterprise” alleged in Count II is fatally deficient, as discussed supra, the conspiracy alleged in Count IV is similarly deficient. Count II fails to allege that TranSouth participated in the affairs of the enterprise, Falk, and Count TV can not be read to allege that the defendants entered into an agreement that Tran-South would participate in the affairs of Falk. Count IV must therefore be dismissed as to TranSouth for this additional reason, in addition to plaintiffs’ failure to satisfy the standing requirements under § 1964(c), as discussed supra.
Accordingly, Count IV should be DISMISSED as to TranSouth.
Based on the foregoing analysis, Plaintiffs’ Complaint clearly fails to adequately allege a civil RICO action against TranSouth. As to all four RICO Counts, the Complaint fails to allege reliance and fails to allege proximate cause. Additionally, as to Counts II and IV, the Complaint fails to allege that TranSouth participated, or agreed to participate, in the affairs of Falk through a pattern of racketeering activity.
Accordingly, TranSouth’s Motion to Dismiss Counts I through IV of the Complaint under Rule 12(b)(6) should be GRANTED.
In addition, Plaintiffs have declared that Count V of the Complaint, alleging violation of the Fair Debt Collection Practices Act, is “not directed against TranSouth.” Substitute Brief at 23 n. 4. Accordingly, this Count is rendered moot as against Tran-South. The remaining claims against Tran-South, in Counts VI through VIII, are presented as entirely state law causes of action. Therefore, no federal claims exist against TranSouth, and the dismissal of remaining pendent state claims is within the discretion of the district court. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnote omitted); Brandenburg v. Seidel, 859 F.2d 1179, 1190 (4th Cir.1988) (once RICO claims have been dismissed, pendent state claims are also properly dismissed); see also Mensh v. Dyer, 956 F.2d 36, 40 (4th Cir.1991) (dismissal of pendent state claims proper where no independent diversity grounds exist). Plaintiffs do not contest the propriety of dismissing the pendent state claims after dismissing the federal claims. (Docket Entry # 18, at 23.)
Accordingly, the remaining claims against TranSouth in Counts VI through VIII, being state claims and having no independent basis for the exercise of federal jurisdiction, should be DISMISSED.

B. The RICO Claims Against Falk and JB

Counts I through IV of the Complaint also allege the same civil RICO violations against Falk and JB as against TranSouth. Falk and JB join TranSouth’s arguments that all four RICO counts should be dismissed for failure to allege reliance, that Count I should be dismissed for failing to distinguish between the “enterprise” and the “pattern of *766 racketeering activity”, and that Counts III and IV should be dismissed for failure to allege a RICO conspiracy. (Amended Mem. of Falk’s and JB in Supp. Motion for Part. J. on Pleadings, Docket Entry # 23, at 2 n. 1 (Docket Entry # 23)). In addition, Falk and JB argue that Count II should be dismissed as to them for failure to distinguish between the “person” and the “enterprise” controlled by that person. Id. at 10.

1.RELIANCE

As before, plaintiffs’ counterargument insists that reliance is not required to state a cause of action for civil RICO using mail fraud as the predicate act. (Docket Entry # 24 at 3.) Having already determined that reliance on the acts of mail fraud is an essential element of plaintiffs’ ease, the question is whether plaintiffs have adequately alleged reliance on the fraudulent mailings of Falk and JB. As to Falk and JB, the Complaint is not so obviously deficient as it is with respect to TranSouth. Several allegations in the Complaint claim that fraudulent letters were mailed by Falk and by JB, and there is at least an implicit implication that these fraudulent letters were relied on by the plaintiffs in paying amounts that were not legally owed. (Complaint ¶¶21, 22, 31, 32, 39, 41, 48, 49, 56, and 57.) Plaintiffs allege that JB issued deceptive, threatening demand letters, pursued collection actions against consumers who defaulted, and improperly calculated the deficiency amounts owed by the consumers. (Complaint ¶86.) A careful perusal of the Complaint, however, exposes the plaintiffs’ failure to allege that they acted in reliance on any of the material that they received from Falk and/or JB through the mail. Nowhere in the Complaint do any of the plaintiffs claim that they paid specific amounts of money that they did not owe, nor is it specifically alleged that any of the named plaintiffs actually paid any money. Plaintiffs allege only generally that the defendants, through the use of the alleged illegal and fraudulent scheme, have been able “to collect money not properly due from plaintiffs or Class members.” (Complaint ¶ 90.)
Once again, plaintiffs fall short of the mark. The Complaint is as fatally deficient as to Falk and JB as it is to TranSouth. Accordingly, Counts I through IV should be DISMISSED as to Falk and JB due to the plaintiffs’ failure to allege reliance.

2. Count I—§ 1962(a)

Plaintiffs’ first claim alleges a violation of 18 U.S.C. § 1962(a), which makes it unlawful for any “person” who has received any income from a “pattern of racketeering activity” to invest any part of that income in any commercial “enterprise.” As discussed previously, Count I alleges an “association-in-fact” type enterprise among the corporate defendants, who function as the “persons” for purposes of § 1962(a). Falk and JB offer essentially the same argument as TranSouth for dismissing this Count, which they insist is deficient because the Complaint fails to distinguish between the association and the pattern of racketeering activity. (Docket Entry #23 at 6.) Falk and JB offer no more support for this argument than TranSouth. As discussed previously with respect to Tran-South, Count I of the Complaint may be read fairly to allege an enterprise having a structure and existence beyond that which is necessary to commit the alleged predicate acts of racketeering activity. Therefore, Count I adequately alleges the required distinction between the “enterprise” and the “pattern” and should not be dismissed on this basis.

3. Count II—§ 1962(c)

Count II of the Complaint alleges that TranSouth and JB are “persons” and that Falk is an “enterprise” within the meaning of RICO, and that TranSouth and JB participate in the conduct of Falk’s affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). (Complaint ¶¶95-98.) Section 1962(c) makes it unlawful for any person to participate in the conduct of the enterprise’s affairs through a pattern of unlawful activity, and Count II therefore designates only TranSouth and JB as defendants. Falk is not a defendant for purposes of Count II.
Falk and JB argue that JB cannot be viewed as the “person” under § 1962(c) because JB is a wholly-owned subsidiary of Falk, and the Complaint therefore fails to *767 state a claim against JB. (Docket Entry #23 at 11-12.) Plaintiffs initially argued that JB’s status as a wholly-owned subsidiary of Falk has been established only by an untested affidavit, rendering dismissal of this Count as to JB premature. (Docket Entry #24 at 8-9.) The Court has received a letter from counsel for plaintiffs representing that plaintiffs have conducted discovery limited to the issue of whether JB was a wholly-owned subsidiary of Falk at all pertinent times. (Docket Entry # 38, filed November 1, 1993.) Plaintiffs state that they have no basis for challenging the statement in the affidavit of Charles E. Falk, Sr., attached to JB’s Motion to Dismiss, that JB is in fact a wholly-owned subsidiary of Falk. (Id.) Accordingly, the Court finds that JB is a wholly-owned subsidiary of Falk.
The law is clear, and plaintiffs have offered no contrary authority, that in any RICO claim brought under § 1962(c), the “person” who is alleged to have participated in the affairs of the “enterprise” through a pattern of racketeering activity must be distinct from that enterprise. See Entre Computer Centers, Inc. v. FMG of Kansas City, 819 F.2d 1279, 1287 (4th Cir. 1987); United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). A RICO claim under § 1962(c) must be dismissed where the “person” is a wholly-owned subsidiary of the corporation that is the “enterprise.” NCNB v. Tiller, 814 F.2d 931, 936 (4th Cir.1987), citing Computer Sciences, 689 F.2d 1181.
Accordingly, summary judgment should be GRANTED as to JB Collection Corp. on Count II because, as a wholly-owned subsidiary of Falk, JB cannot be a “person” under § 1962(c) where Falk is the “enterprise.”

4. COUNTS III & IV—RICO CONSPIRACY

Falk and JB also join TranSouth’s argument that Counts III and TV, alleging the existence of a RICO conspiracy under 18 U.S.C. § 1962(d), both fail to state claims of conspiracy to violate the substantive provisions of §§ 1962(a) and (e). (Docket Entry #23, at 13.) Falk and JB offer the same argument as TranSouth in support of the dismissal of Count III. (See Id. at 14.) This argument has been discussed above, and the same rationale applies to Falk and JB as to TranSouth. Count III adequately alleges an agreement to commit the underlying substantive acts and adequately alleges an enterprise distinct from the pattern of racketeering activity. Accordingly, Count III should be dismissed as to Falk and JB only on the basis of the plaintiffs’ failure to meet the standing requirements for a civil RICO action under 18 U.S.C. § 1964(c).
Count IV incorporates the allegations of Count II, and alleges a conspiracy among TranSouth and JB to participate in the affairs, of Falk through a pattern of racketeering activity. (Complaint ¶ 111.) Falk is not a defendant for purposes of Count II or Count IV. As discussed above, JB is a wholly-owned subsidiary of Falk and cannot function as the “person” for purposes of § 1962(c) because it is indistinguishable from the enterprise. Accordingly, Count IV should be DISMISSED as to JB Collection Corp. for this additional reason.

III. The Fair Debt Collection Practices Act Claim

Count V alleges that JB Collection Corporation violated 15 U.S.C. § 1692e, the Fair Debt Collection Practices Act (the “FDCPA”) in collecting the debts owed by plaintiffs. (Complaint ¶ 113-120.) The alleged violations are asserted against JB by all plaintiffs, but JB has moved for partial summary judgment against only plaintiff Seamster. JB argues that, as to plaintiff Seamster, the Complaint was filed beyond the Act’s one year limitations period and therefore must be dismissed. (Docket Entry #23, at 14-15.)
In response, plaintiff Seamster apparently argues that the limitations period does not begin to run until the discovery of the misrepresentations. (Docket Entry #24, at 9-10.) Plaintiff Seamster does not dispute the applicability of the one year limitations period created by 15 U.S.C. § 1692k(d), only the date on which it begins to run.
*768 Much like the RICO Act, the FDCPA creates a private right of action in favor of individuals victimized by violators of its provisions. See 15 U.S.C. § 1692k. In relevant part, the limitations provision of the FDCPA provides: “An action to enforce any liability created by [the FDCPA] may be brought ... in any appropriate United States district court without regard to the amount in controversy ... within one year from the date on which the violation occurs.” 15 U.S.C. § 1692k(d). With respect to plaintiff Seam-ster, the Complaint alleges that JB violated the FDCPA on two occasions. First, the Complaint alleges that JB sent plaintiff Seamster an improper demand letter on December 27, 1988. (Complaint ¶¶ 56 and 117-120.) Second, the Complaint alleges that JB improperly commenced a deficiency action against plaintiff Seamster on March 26,1989. ¶ 57 and 120. The Complaint was filed on June 17, 1993.
The Complaint obviously was filed well over one year after the last date on which JB allegedly did anything to violate the FDCPA. The sole issue presented concerns the date from which the one year period of limitations runs. JB argues that the running of the limitations period commences on “the last date upon which the debt collector engaged in the allegedly violative acts” and offers Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir.1992) in support. (Amended Mem., Docket Entry # 23, at 15; Reply Mem., Docket Entry # 25, at 9.) Plaintiff Seamster argues that in a ease such as this, where the defendant’s fraud conceals the FDCPA violations, the limitations period “cannot begin to run until the misrepresentation is discovered” and offers Goldman v. First Nat’l Bank of Chicago, 532 F.2d 10, 21 (7th Cir.1976) in support.
Significantly, Mattson directly concerned the application of the limitations period of the FDCPA, while Goldman involved a separate, though similar, limitations period contained in the Federal Truth in Lending Act. In Mattson, involving letters that allegedly violated the FDCPA, the Eighth Circuit held that the limitations period runs from the date on which the defendant committed the allegedly violative act by mailing the letters. Mattson, 967 F.2d at 261. In addition, the court in Mattson noted that § 1692k(d) is a jurisdictional statute, and the federal courts “are not at liberty to disregard the jurisdictional limitations Congress has placed upon” them. Id. at 262.
Goldman, cited by plaintiffs, concerned the date on which the one year limitations provision of the Truth in Lending Act should begin to run. Plaintiffs were a group of consumers who alleged they had been victimized by misleading disclosures on an open-end credit plan, and the Seventh Circuit ruled that the limitations period would run from the date on which a finance charge was first imposed, rather than the date on which the misleading disclosures were made. Goldman, 532 F.2d 10, 21-22. The debtor in an open-end credit transaction has no cause for complaint until a finance charge is levied against him, and it is the imposition of the finance charge that violates the Truth in Lending Act so as to start the running of the limitations period. Id.
Contrary to the plaintiffs’ characterization, the holding in Goldman is not analogous to plaintiff Seamster’s situation. The holding in Goldman did not depend on a tolling rationale that began the running of the limitations period from the date of plaintiffs discovery of the violation, despite the plaintiffs argument in favor of a discovery rule based on the lack of opportunity of the consumer to discover that a wrong had occurred. See Goldman, 532 F.2d 10, at 21. Though finding in favor of the plaintiffs, the Seventh Circuit chose not to follow the plaintiffs’ rationale in favor of “tolling” the statute and, instead, opted to hold simply that the violation does not occur until the finance charges are imposed. Id.
The lesson to be derived from both Goldman and Mattson is that the limitations period in the FDCPA is to commence as the result of some affirmative action taken by the defendant. In Mattson, that action was the mailing of letters that contained violations of the FDCPA. In Goldman, that action was the imposition of finance charges on open-end consumer credit transactions pursuant to inaccurate, incomplete, or misleading disclosures. In neither case did the running of the *769 limitations period wait until the consumer discovered the violation.
Finally, the plain language of the statute clearly indicates Congress intended the limitations provision to be jurisdictional. The section creating the private right of action, 15 U.S.C. § 1692k, contains a subsection entitled “Jurisdiction.” That subsection specifically provides “[a]n action to enforce any liability created by [the FDCPA] may be brought ... within one year from the date on which the violation occurs.” 15 U.S.C. § 1692k(d). The statute contains no tolling provision, and because this limitations period is jurisdictional, it is not subject to the doctrine of equitable tolling. See Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039 (D.C.Cir.1986) (limitations period of Real Estate Settlement Procedures Act is jurisdictional limitation and therefore will not be tolled or extended on account of fraud); McDonald v. Centra, 118 B.R. 903, 928 n. 16 (D.Md.1990) (dicta), aff'd, 946 F.2d 1059 (4th Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 2325, 119 L.Ed.2d 244 (1992).
Plaintiff Seamster’s argument focuses exclusively on a discovery rationale, and she offers no alternative date upon which the limitations period is to commence. Having concluded that the one year limitations provision of the FDCPA is jurisdictional and not subject to equitable tolling, plaintiff Seam-ster’s claim under the FDCPA is clearly barred by the limitations period in 15 U.S.C. § 1692k(d), since the last date on which JB is alleged to have committed any violative act-was more than one year prior to the filing of this Complaint.
Accordingly, the claim by plaintiff Seam-ster against JB in Count V of the Complaint, alleging violations of the FDCPA, should be DISMISSED.

RECOMMENDATIONS

For the foregoing reasons, it is RECOMMENDED as follows:
1)that TranSouth’s motion to dismiss the RICO claims in Counts I through IV be GRANTED;
2) that TranSouth’s motion to dismiss the pendent state law claims in Counts VI through VIII be GRANTED as to it;
3) that Falk and JB’s motion for partial summary judgment be GRANTED as to the RICO claims in Counts I through IV; and
4) that Falk and JB’s motion for partial summary judgment as to plaintiff Seamster in Count V be GRANTED;

DIRECTIONS FOR MAILING AND REVIEW PROCEDURES

The Clerk shall mail copies of this Report and Recommendation to counsel of record. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b):
1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendation within ten (10) days from the date of mailing of this report to the objecting party (see 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.
2. A district judge shall make a de novo determination of those portions of this report or specific recommendation to which objection is made.
The parties are further notified that failure to file timely objections to the recommendation set forth above will result in waiver of right to appeal from a judgement of this court based on such recommendation. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir.1985) (quoting Carr v. Hutto, 737 F.2d 433, 434 (4th Cir.1984), cert. denied, 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985)); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

. This outstanding report is commended for consideration in any further appellate activity.

. Specifically, the predicate acts are alleged to be the mailing of false and deceptive notices of private sales, deceptive demand letters, and service of process and pleadings in improper deficiency actions.

. For purposes of this opinion, the Court only assumes that the allegations made in the Complaint state a violation of the federal mail fraud statute.

. This argument is made in a note from the Notre Dame Law Review. See Note, What Ever Happened to Durland? Mail Fraud, RICO, and Justifiable Reliance, 68 Notre Dame L.Rev. 333 (1992).

.In fact, other circuits have found that reliance on the mailings is an element of civil RICO claims based on mail or wire fraud. See, e.g., Metromedia v. Fugazy, 983 F.2d 350, 368 (2d Cir.1992); Pelletier v. Zweifel, 921 F.2d 1465, 1499-1500 (11th Cir.), cert. denied,-U.S.-, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); Grantham & Mann v. American Safety Products, 831 F.2d 596, 606 (6th Cir. 1987). Cf. Shaw v. Rolex Watch U.S.A., Inc., 726 F.Supp. 969, 972-73 (S.D.N.Y.1989) (under § 1964(c), injury must result from reliance on defendant's fraud but such *746 reliance need not necessarily be that of the plaintiff).

. Although the plaintiffs have generally alleged that they were injured “by reason of" the unlawful conduct of the defendants, see National Org. for Women, Inc. v. Scheidler, — U.S.-,-, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994) (on a motion to dismiss, general allegations are presumed to embrace the specific facts required to prove the claim), the plaintiffs have admitted that there was no detrimental reliance on the mailings of the defendants (arguing instead that none is necessary). Thus, allowing these claims to proceed until a summary judgment motion is made would be a waste of time and resources.

. This point is somewhat irrelevant and repetitive. In this case, if no reliance on the mailings is necessary under § 1964(c) then proximate cause has been adequately alleged. Because we hold that reliance is necessary, though, the claims must be dismissed.

. This statute states in pertinent part that: "It shall be unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise ... engaged in ... interstate or foreign commerce.” 18 U.S.C. § 1962(a) (1988).

. Count IV alleges a conspiracy to violate Section 1962(c).

. No objection was made to the Magistrate Judge's determination concerning JB and, therefore, we do not address that issue.

. This claim is made only against the collection • agent.

. It is not clearly alleged why Falk bids for a' car if the transfer back is pursuant to the repurchase agreement. E.g., in ¶ 20 it is alleged that the transfer back is pursuant to the “contractual arrangement,” and in ¶ 24 it is alleged that the transfer price is "devised [sic] pursuant to the repurchase agreement.”

. The complaint uses "bid” in V 18 and "private sale" in ¶ 19, but they appear to refer to the same transaction.

. In an affidavit, Charles E. Falk, Sr', states that JB is a wholly-owned subsidiary of Falk. (Docket Entry #21, ¶ 11.)

. It is not alleged that this notice advised the plaintiff that she could pay the deficiency and redeem the car, but that is implied.

. Her car was resold for $375 more than she had paid for it.

. Her car was resold for $300 more than she had paid for it.

. Her car was sold for $125 less than she had paid for it.

. Her car was resold, after she was sued, for $192 less than she had paid for it. The deficiency action against Seamster sought interest and costs, not attorney's fee.

. A statute of limitations defense is raised as to Plaintiff Seamster.

. In ¶¶ 96 and 110, it is alleged that in the churning and repossession scheme Falk is the RICO-defined enterprise. Paragraphs 97 and 111 allege that TranSouth is associated with and employed by Falk, and that TranSouth participates directly and indirectly in Falk's affairs. Paragraphs 98 and 111 allege that JB is associated with and employed by Falk, and that it participates directly and indirectly in Falk's affairs.

.At oral argument, plaintiffs' counsel stated that the purpose of the enterprise was not as alleged in ¶ 77, but it was the "universe of financing” between Falk, plaintiffs and TranSouth, 75% of which is legitimate and 25% of which is illegitimate. This change in direction apparently occurred to plaintiffs’ counsel after counsel for Falk and JB went beyond the record and stated that only 25% of car sales ended in default.

. Falk and JB have presented all pleadings and arguments jointly and, for clarity,- they will be collectively referred to as "Falk."

. 18 U.S.C. § 1962 provides, in relevant part:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

. During oral argument, plaintiffs' counsel referred to this law review article in support of their position that this court should not follow the reasoning of the Fourth Circuit in Brandenburg. Plaintiffs' counsel insisted that none of the Circuit Courts, including the Fourth Circuit, that have addressed the reliance issue have had it presented in a proper framework. See Whatever Happened to Durland?, 68 Notre Dame L.Rev. at 393:
The courts are incorrectly looking to the jurisprudential assumptions underlying the common-law of obtaining money by false pretenses and the common-law tort of deceit as means to restrict mail fraud in the civil RICO context. Historical analysis, however, amply demonstrates that mail fraud finds its precursor in the common law of cheat.... The courts, moreover, improperly use the “by reason of" provision of RICO to require not only causation but also that reliance be both alleged and proven.

. Plaintiffs offer the recent opinion of the Tenth Circuit in Resolution Trust Corporation v. Stone, *764 998 F.2d 1534 (10th Cir.1993) to bolster their argument that they have satisfied the "operation or management” requirement. Stone, however, involved an "association-in-fact” type enterprise among several defendants. Id. at 1542. The "person" defendant at issue in the relevant portion of the Stone opinion was a corporate defendant shown to have engaged in a high level of participation in the affairs of the association-in-fact enterprise, including having a shared director with another corporate defendant. Id. The Stone opinion quotes extensively from Reves, and nothing in the opinion suggests that Tran-South should be held liable as a "person” under § 1962(c).